# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 11-CV-710 (JFB)(GRB)
_____

EDWARD ARREDONDO,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.

Defendants.

_____

**MEMORANDUM AND ORDER**
March 16, 2012
_____

Joseph F. Bianco, District Judge:

Plaintiff Edward Arredondo ("plaintiff or "Arredondo"), proceeding *pro se*, brought the above-captioned action against the defendants County of Nassau; Civil Service Employee Association (CSEA) Local 1000, AFSCME, AFL-CIO ("CSEA Local 1000"); Civil Service Employee Association (CSEA) Local 830, AFSCME, AFL-CIO ("CSEA Local 830"); Thomas R. Suozzi ("Suozzi") in his individual and official capacities as Executive of the County of Nassau; Martin F. Scheinman ("Scheinman") in his individual and official capacities under color of law as Arbitrator in the Discipline Matter of Edward Arredondo; Bonnie Garone ("Garone") in her individual and official capacities as Commissioner of Investigations; John Imhof ("Imhof") in his individual and official capacities as Commissioner; Mary Brosnan ("Brosnan") in her individual and official capacities as Deputy Commissioner of the County of Nassau; Maureen McLoughlin ("McLoughlin")[1] in her individual and official capacities as Director of Child Protective Services of the County of Nassau; Rigo Predonzan ("Predonzan") in his individual and official capacities as Labor Relations Specialist of CSEA Local 830; Robert Guierri ("Guierri")[2] in his individual and official capacities as Executive Vice President of CSEA Local 830; Nancy Hoffman, Esq. ("Hoffman") in her individual and official capacities as General Counsel of CSEA Local 1000; Tim Connick, Esq. ("Connick") in his individual

_____

[1] Defendants the County of Nassau, Brosnan, Garone, Imhof, McLoughlin and Suozzi will collectively be referred to as the "County defendants."
[2] Defendants CSEA Local 1000, CSEA Local 830, Laricchiuta, Guierri and Predonzan will collectively be referred to as the "CSEA defendants."

1

and official capacities as Deputy Counsel of CSEA Local 1000; and an unknown number of County of Nassau and CSEA employees (collectively the "defendants").

Arredondo alleges that the County defendants and the CSEA defendants violated his Fourteenth Amendment rights to due process and equal protection, pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff also alleges that defendants Hoffman, Connick and Scheinman[3] violated his due process rights pursuant to Section 1983. Arredondo also alleges that the CSEA defendants and defendants Hoffman and Connick breached their duty of fair representation under New York law.

Connick, Hoffman, the County defendants and the CSEA defendants also construe plaintiff's complaint as one for conspiracy under Section 1983.

The County defendants now move to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Defendants Hoffman and Connick move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). The CSEA defendants also move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, defendant Scheinman moves to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).[4] For the reasons set forth herein, the motions to dismiss are granted as to all defendants under Rule 12(b)(6).

I. FACTS

A. Background

The following facts are taken from the complaint and are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss and will construe them in a light most favorable to plaintiff, the non-moving party.

In February 2008, Arredondo was a Child Protective Services ("CPS") Supervisor II, Step 11. (Complaint ¶¶ 7, 109.) On Friday, February 22, 2008, Nassau County CPS received the case of Leatrice Brewer. (*Id.* ¶ 2.) At that time, plaintiff was assigned the Brewer family case and

---

[3] "Count VI" of plaintiff's complaint is titled "Violation of Fourteenth Amendment Due Process Protected Liberty and Property Rights and Plaintiff's Right to Equal Protection Under the Law." (Complaint at 46.) Although plaintiff claims that Scheinman's violation of his due process rights was "[f]atally injurious to plaintiff's right to equal protection under the law," (*Id.* ¶ 319), plaintiff's allegations only present a claim against Scheinman, for violation of his due process rights. (*Id.* ¶¶ 286-319.) This is exemplified by plaintiff's description of Scheinman in the "PARTIES" section of his complaint. In this section, Arredondo summarizes the allegations against each of the defendants. With regard to Scheinman, plaintiff states "Arbitrator Martin F. Scheinman. He was selected out of rotational order at the behest of the County of Nassau, and did not disclose to plaintiff his $10,000 donation to the re-election campaign of the very person who caused plaintiff to be disciplined and stigmatized on the basis of a lie --- Thomas R. Suozzi, Executive of Nassau County; and this maliciousness caused injury to plaintiff's due process protected property and liberty interests by denying him a fair arbitration." (*Id.* ¶ 48.) Accordingly, plaintiff has only brought a claim against Scheinman for a violation of his due process rights, which is dismissed for the reasons set forth *infra*. In any event, even assuming *arguendo* that Arredondo was attempting to bring an equal protection claim against Scheinman, such claim also fails as a matter of law because, *inter alia*, Scheinman is entitled to absolute immunity on such a claim.

[4] After the Court indicated in an Order dated March 7, 2012 that further briefing and/or an evidentiary hearing would be necessary to resolve the motions under Rule 12(b)(5) for improper service, defendants advised the Court by letter that they were waiving the issue of personal service to allow the Court to consider the Rule 12(b)(6) motions. Accordingly, the Rule 12(b)(5) motions are denied as moot.

directed a subordinate CPS case worker to visit the Brewer family on Sunday, February 24, 2008. (*Id.* ¶¶ 15, 16, 18.) On Sunday, February 24, 2008, Leatrice Brewer murdered her three children by drowning them in her apartment. (*Id.* at ¶¶ 3, 54.) On February 25, 2008, Nassau County suspended plaintiff without pay pending the outcome of an investigation into whether plaintiff violated Nassau County's "24 hour contact policy." (*Id.* ¶¶ 63, 67.)

On February 26, 2008, Suozzi held a press conference regarding the Brewer family and stated that plaintiff made a "'bad decision . . . because of the mandate to begin a CPS investigation within 24 hours of a complaint.'" (*Id.* ¶ 6.) The *New York Daily News* reported plaintiff's name based on unnamed sources. (*Id.* ¶ 78.)

Suozzi ordered an official investigation by Garone, Commissioner of Investigations. (*Id.* ¶ 96.) Garone filed a "Report to the County Executive on Child Protective Services" which was posted on the County's website on June 13, 2008. (*Id.*) Plaintiff subsequently had a disciplinary hearing before Arbitrator Scheinman that took place over four individual sessions on May 16, 2008, September 4, 2008, February 20, 2009 and April 3, 2009. (*Id.* ¶ 29.) On October 21, 2009, Arbitrator Scheinman found plaintiff guilty of breach of duty. (*Id.* ¶¶ 27, 29, 159.) Plaintiff was ultimately demoted from Supervisor II, Step 11, to Caseworker I, Step I. (*Id.* ¶¶ 7, 159.)

On October 29, 2009, plaintiff discovered that Arbitrator Scheinman had made a donation to Suozzi's reelection campaign. (*Id.* ¶ 204.) CSEA Labor Relations Specialist Predonzan told plaintiff that "we were aware about him and Suozzi . . . he told us before the start of your arbitration . . . he was donating to Suozzi." (*Id.*) Predonzan told plaintiff that because the union was part of the arbitration, rather than plaintiff, the union did not have to disclose the donation to him. (*Id.*)

Plaintiff then submitted a request for a union-funded New York Article 75 proceeding for judicial review of the arbitrator's award. (*Id.* ¶ 218.) In a letter dated December 22, 2009, General Counsel for CSEA, Inc., Hoffman and Connick, denied plaintiff's request, stating that there was no legal basis to vacate the award. (*Id.* ¶ 219.)

Plaintiff was, and still is, a member of the bargaining unit of Nassau County employees represented by CSEA Local 830 and CSEA Local 1000. (*Id.* ¶ 42.)

B.  Procedural History

Plaintiff filed his complaint on February 14, 2011.

1. Procedural History as to Hoffman, Connick, the County Defendants and the CSEA Defendants

The County defendants, the CSEA defendants and defendants Hoffman and Connick filed separate motions to dismiss on May 20, 2011. On June 20, 2011, plaintiff filed opposition to the County defendants' motion and a separate opposition to Hoffman and Connick's motion. Plaintiff also filed papers in opposition to defendants Laricchiuta, Predonzan, and Guierri's motion to dismiss the complaint on June 20, 2011. In plaintiff's opposition to Laricchiuta, Predonzan, and Guierri's motion, he made a request for additional time to submit evidence in opposition to the CSEA defendants' motion. By Order dated June 29, 2011, the Court granted plaintiff's request and revised the briefing schedule, allowing plaintiff until July 29, 2011 to

3

secure additional affidavits and discovery necessary to file his opposition to the defendants' motions and giving the defendants until August 12, 2011 to file their replies.

On July 29, 2011, plaintiff made a second request for additional time to file additional oppositions to the motions to dismiss. Hoffman, Connick, the County defendants and the CSEA defendants opposed this request. On August 12, 2011, defendants Hoffman and Connick filed their reply and the Court scheduled a telephone conference to address plaintiff's request.

At a telephone conference on August 29, 2011, the Court extended plaintiff's time to file opposition to September 30, 2011. The Court also extended the defendants' deadline to file their replies to October 14, 2011. Plaintiff did not file any subsequent opposition before the September 30, 2011 date.

On October 14, 2011, the CSEA defendants and the County defendants filed replies in support of their respective motions to dismiss. The CSEA defendants indicated in their reply that they were construing plaintiff's opposition to Laricchiuta, Predonzan, and Guierri's motion to dismiss as against all of the CSEA defendants because the individual CSEA defendants were also sued in their official capacities. On December 13, 2011, the Court issued an Order allowing the plaintiff to file opposition to CSEA Local 1000's motion to dismiss and permitting CSEA Local 1000 to submit a reply by January 27, 2012. Plaintiff filed opposition to CSEA Local 1000's motion to dismiss on January 13, 2012, and supplemental opposition on January 19, 2012.[5] On January 27, 2012, the CSEA defendants and defendants Hoffman and Connick submitted replies to plaintiff's January 13, 2012 and January 19, 2012 submissions.

2. Procedural History as to Scheinman

On July 1, 2011, plaintiff moved for entry of default as to Scheinman.[6] Scheinman filed his motion to dismiss on August 17, 2011. Plaintiff filed his opposition to Scheinman's motion on September 30, 2011. Scheinman filed his reply on October 7, 2011. On October 24, 2011, Scheinman filed a letter with additional information indicating that the arbitration presided over by Scheinman was not administered by the American Arbitration Association, but that Scheinman was selected from a permanent panel of arbitrators who preside over arbitrations between the County of Nassau and the Civil Service Employees Association.

The Court has fully considered all of the arguments raised by the parties.

II. STANDARD OF LAW

When a Court reviews a motion to dismiss for failure to state a claim for which

---

[5] The opposition filed by plaintiff on January 13, 2012, and the supplemental opposition filed by plaintiff on January 19, 2012, raised arguments against all of the CSEA defendants and defendants Hoffman and Connick despite the Court's Order permitting opposition only as against CSEA Local 1000. In any event, the Court has fully considered all of plaintiff's submissions, including these submissions.

[6] By Order dated March 7, 2012, the Court denied the plaintiff's motion for a default because, even assuming *arguendo* that defendant Scheinman was properly served (which Scheinman has decided not to contest in order to allow a decision on his Rule 12(b)(6) motion), there is absolutely no basis for a default judgment because there is no evidence that any failure to answer was willful, no prejudice resulted to plaintiff, and the claims against defendant Scheinman are completely without merit (for the reasons discussed *infra*).

4

relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. New York State Unified Ct. Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949

F.2d 42, 48 (2d Cir. 1991)("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

#### A. Section 1983

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). An individual acts under color of state law when he or she exercises power "'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299 (1941)). "Private parties are generally not amenable to suit under § 1983, because they are not state actors, although they may be liable where 'there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself,' . . . or where they are 'jointly engaged with state officials' in a conspiracy to deprive the plaintiff of his constitutional rights." *Bhatia v. Yale Sch. of Medicine*, 347 F. App'x 663, 664-65 (2d Cir. 2009) (internal citations omitted).

#### B. Private Actors and Plaintiff's Section 1983 Conspiracy Claim

##### 1. Applicable Law

It is axiomatic that private citizens and entities are not generally subject to Section 1983 liability. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *Reaves v. Dep't of Veterans Affairs*, No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) ("Purely private conduct is not actionable under § 1983, 'no matter how discriminatory or wrongful.'" (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). However, "the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate.' ('the public function test')." *Sybalski v. Indep. Gr. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

To demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege: (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal. *See Carmody v. City of New York*, No. 05-CV-8084 (HB), 2006 WL 1283125, at *5 (S.D.N.Y. May 11,

6

2006) (citing *Ciambriello*, 292 F.3d at 324-24). Vague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983." (citing *Ciambriello*)); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek*, No. 3:05CV1851, 2007 WL 4322780, at *3 (D. Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

2. Application

The CSEA defendants and defendants Connick and Hoffman argue that they are not state actors and that plaintiff has failed to plead a Section 1983 conspiracy claim. The County argues that, to the extent plaintiff has attempted to plead a Section 1983 conspiracy claim, he has failed to sufficiently plead that claim in order to survive a motion to dismiss. For the reasons set forth below, this Court agrees.

First, labor unions are generally not state actors. *Ciambriello*, 292 F.3d at 324. Moreover, a union's representation of public employees does not transform it into a state actor. *Id.*; *see also Marrero v. City of New York*, No. 02-CV-6634 (DCL), 2003 WL 1621921, at *4 (S.D.N.Y. Mar. 23, 2003). However, with regards to the CSEA defendants, plaintiff alleges that the union, through Laricchuita and his agents, violated his rights by: (1) agreeing with the County to select Arbitrator Scheinman out of rotational order as the arbitrator for plaintiff's discipline case, at the County's insistence (Complaint ¶¶ 10-12, 196, 276-77, 280-88); (2) failing to inform plaintiff of Scheinman's donation to Suozzi (*Id.* ¶¶ 49-51, 195, 204); and (3) acquiescing in the County's failure to timely issue disciplinary charges prior to the arbitration (*Id.* ¶¶ 197, 207, 279). However, these allegations are merely conclusory and do not allege sufficient detail to demonstrate that the CSEA defendants were involved in a conspiracy with the County defendants. For example, plaintiff states:

> [u]pon information and belief, the county of Nassau, and in concert with CSEA president Jerry Laricchiuta, reached an 'understanding' concerning the selection of Martin F. Scheinman out of rotational order. Sufficient evidence exists for a jury to 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding."

(*Id.* ¶ 10.) However, not only does plaintiff fail to indicate what amounts to "sufficient evidence," his statements are only general allegations. Plaintiff's complaint alleges, in conclusory fashion, that there was an understanding between the CSEA defendants and the County defendants. Thus, these allegations lack the specificity needed to withstand a motion to dismiss. Accordingly, plaintiff has failed to demonstrate that the CSEA defendants are state actors through their actions with the County defendants, nor does plaintiff allege sufficient facts to allege that the County was engaged in a conspiracy pursuant to Section 1983.

7

With regards to defendants Hoffman and Connick, attorneys are not state actors through their use of the judicial process. *See Morpurgo, M.A. v. The Inc. Village of Sag Harbor*, 697 F. Supp. 2d 309, 338 (E.D.N.Y 2010). Moreover, plaintiff's complaint is completely devoid of any allegation that defendants Connick and Hoffman conspired with the County defendants, or any other state actor. Construing plaintiff's complaint liberally, it appears as though plaintiff is arguing that Hoffman and Connick are state actors because they took actions to protect union officials. (Complaint ¶¶ 226-27.) As plaintiff states in the complaint,

> 226. Nancy Hoffman and Tim Connick also violated their duty of fair representation to plaintiff, and to all members of CSEA Local 830 when they failed to take corrective action regarding the trampling of petitioner's due process protected property rights and liberty interests by President Laricchiuta, CSEA Local 830 Labor Relations Specialist Rigo Predonzan, and Executive Vice President Rob Guierri.
>
> 227. Hoffman and Connick's cover up and failure to take corrective action only insures that these fiduciary and statutory violations will be repeated against plaintiff by President Laricchiuta, Rigo Predonzan, and Executive Vice President Ron Guierri, and other members victimized by a union hierarchy who operate above the rules of law and who believe that they will never be held accountable.

(*Id*.) Not only are plaintiff's statements conclusory and therefore insufficient to allege a conspiracy, plaintiff has failed to allege that there was any agreement between defendants Hoffman and Connick and a state actor. As discussed *supra*, the CSEA defendants are not state actors. Even if plaintiff's allegations in the complaint were true, plaintiff fails to allege that Hoffman and Connick conspired with any state actor. Thus, Hoffman and Connick cannot be liable to plaintiff under Section 1983 and any conspiracy claim brought by plaintiff against Hoffman and Connick must be dismissed.

Accordingly, to the extent plaintiff attempts to assert a claim of conspiracy pursuant to Section 1983, it must be dismissed. Moreover, the Section 1983 claims against Hoffman, Connick and the CSEA defendants must be dismissed because the CSEA defendants, Hoffman and Connick are not state actors.[7]

---

[7] Plaintiff also presents a state law claim for breach of the duty of fair representation against the CSEA defendants and defendants Connick and Hoffman. However, having determined that plaintiff's federal claims against the CSEA defendants and defendants Hoffman and Connick do not survive defendants' motions to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc*., No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); s*ee also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the

### C. Section 1983 Claims Against the County of Nassau

The County defendants argue that the claims against the County of Nassau should be dismissed because the complaint fails to demonstrate that the constitutional violations complained of were caused by a Nassau County policy or custom, as required by *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978). As set forth below, the Court agrees.[8]

Under *Monell*, 436 U.S. 658, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Id*. at 694; *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) *superseded in part on other grounds by* the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, amending 42 U.S.C. § 1981 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989), and *Monell*, 436 U.S. at 692-94). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44).

However, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("A municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of respondeat superior.");

---

state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.") Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over plaintiff's remaining state law claim for breach of the duty of fair representation given the absence of any federal claims that survive the motions to dismiss, and dismisses any such claim without prejudice.

[8] In any event, the *Monell* claim also cannot proceed because, as discussed *infra*, there is no underlying constitutional claim that can survive a motion to dismiss as it relates to the individual County defendants because plaintiff cannot plausibly allege a deprivation of a constitutional right under the due process or equal protection clause. Thus, where a plaintiff "has not established any underlying constitutional violation, [plaintiff] cannot state a claim for § 1983 supervisory liability." *Elek v. Inc. Vill. of Monroe*, --- F. Supp. 2d ----, 2011 WL 4472027, at *5 (S.D.N.Y. Sept. 27, 2011); *see also Alston v. Bendheim*, 672 F. Supp. 2d 378, 388-89 (S.D.N.Y. 2009) ("The failure to state a claim for an underlying violation forecloses supervisory liability."); *Clark v. Sweeney*, 312 F. Supp. 2d 277, 298 (D. Conn. 2004) ("As there was no underlying deprivation of constitutional rights, accordingly, there can be no supervisory liability. . . .").

9

*Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." (quoting 42 U.S.C. § 1983)).

In this case, plaintiff has failed to set forth any allegations that there was a policy or custom of disciplining and demoting individuals in violation of their federal rights. In fact, the crux of plaintiff's complaint is that he was selectively disciplined and blamed for the deaths of the Brewer children. For example, one section of plaintiff's complaint is titled "PLAINTIFF WAS THE ONLY SUPERVISOR WHO PERFORMED HIS SUPERVISORY DUTIES BUT WAS SELECTIVELY DISCIPLINED BY COMMISSIONER IMHOF AND DEPUTY COMMISSIONER BROSNAN." (Complaint at 5.) Further, plaintiff alleges that "[t]his selective discipline administered by Commissioner Imhof and Deputy Commissioner Brosnan regarding plaintiff's alleged violation of 18 NYCRR 432.2(2008), is prima facie evidence that plaintiff was scapegoated to comport with the stigmatizing statements of their political patron, Executive Thomas R. Suozzi." (*Id.* ¶ 24.) Thus, the complaint does not make a single allegation in regards to a custom or policy in place by Nassau County. Accordingly, Nassau County cannot be liable to plaintiff under Section 1983.[9]

D. Section 1983 Claims Against the Individual County Defendants and Defendant Scheinman

1. Due Process Claim Against Scheinman and the Individual County Defendants[10]

The County defendants argue that plaintiff has failed to utilize his judicial remedies under New York Civil Practice Laws and Rules Articles 75 and 78 and, therefore, cannot bring a Section 1983 claim for an alleged deprivation of property or liberty.[11] Defendant Scheinman also argues

---

[9] The County defendants also argue that the claims against the individual defendants in their official capacity should be dismissed as duplicative of the claims against the County of Nassau. This Court agrees. With regard to the individual defendants sued in their official capacities, these claims are duplicative of the municipal liability claim lodged against the County of Nassau under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see, e.g.*, *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y.2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985))). Therefore, the Court dismisses all claims brought against defendants Brosnan, Garone, Imhof, McLoughlin and Suozzi in their official capacities. In any event, these claims could not survive for the same reasons that the *Monell* claim cannot survive.

[10] In addition to arguing that defendants Hoffman and Connick are not state actors, defendants Hoffman and Connick argue that plaintiff's due process rights have not been violated because he was provided with an adequate post-deprivation remedy. The Court agrees. Even if plaintiff could properly allege that non-state actor defendants Hoffman and Connick conspired with the individual County defendants under Section 1983 to violate plaintiff's due process rights, the due process claims against Hoffman and Connick would fail as a matter of law for the same reasons that the claims against the individual County defendants fail – namely, plaintiff failed to utilize the post-deprivation remedy available to him under Article 75. Thus, plaintiff's due process claim against defendants Hoffman and Connick are also dismissed on this ground. Moreover, this defect cannot be cured because any attempt to re-plead a conspiracy claim against the CSEA defendants and defendants Connick and Hoffman would be futile.

[11] The County defendants also argue that the plaintiff's due process claim should be dismissed because the complaint does not allege with any

that the claims against him must be dismissed because he is entitled to absolute immunity for acts arising out of his duties as an arbitrator. As set forth below, the Court agrees that no Section 1983 due process claim can lie in this case as a matter of law because adequate procedural remedies exist under state law for all of the procedural defects in the disciplinary and arbitration process that resulted in plaintiff's demotion. Moreover, the claims against defendant Scheinman – all of which relate to his actions as the arbitrator – are barred by the doctrine of absolute immunity.

a. Applicable Law on Due Process Claim

When a plaintiff brings a due process claim "[b]ased on random unauthorized acts by state employees . . . [t]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty so long as the State provides a meaningful post [-] deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *Parratt v. Tay*lor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

Section 7511 of the New York Civil Practice Law and Rules provides that an arbitrator's award can be vacated or modified if it was based on, *inter alia*,

(i) corruption, fraud or misconduct in procuring the award; or

(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or . . .

N.Y.C.P.L.R. § 7511(b)(1)(i)-(ii). An application to vacate or modify an award must be made within ninety days after the award is delivered to the party. N.Y.C.P.L.R. § 7511(a).

In addition, Article 78 proceedings can be utilized by a municipal employee to challenge a demotion. As the Second Circuit has emphasized, "[t]his court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (quotations and citations omitted).

b. Application

Here, plaintiff's Section 1983 due process claims are based upon various alleged random and unauthorized acts in the arbitration process for which he had an adequate post-deprivation remedy pursuant to Article 75 of the New York Civil Practice Law and Rules. However, plaintiff failed to make an application to vacate or modify Arbitrator Scheinman's decision. Moreover, the time for plaintiff to bring an Article 75 proceeding has long expired. The complaint alleges that the Arbitrator rendered his

---

specificity the utterance of a statement at the press conference that was sufficiently derogatory and because the individual defendants are entitled to qualified immunity. However, as discussed *supra*, this Court finds that an adequate post-deprivation procedure existed under Articles 75 and 78 and, thus, no plausible Section 1983 due process claim can be asserted. Accordingly, this Court need not address these other arguments.

decision on October 21, 2009. (Complaint ¶¶ 26, 29.) Plaintiff brought this action February 14, 2011, more than one-year later. Thus, the time for plaintiff to bring an Article 75 proceeding has expired.

The fact that plaintiff requested a union-funded Article 75 proceeding within the applicable statutory time frame does not alter this decision. Although plaintiff does not indicate when he requested a union-funded Article 75 proceeding, plaintiff alleges that by letter dated December 22, 2009, defendants Hoffman and Connick denied his request. (*Id.* ¶ 219.) At that point, plaintiff would have had ample time to bring an Article 75 proceeding on his own. Therefore, this procedure was clearly available to him.[12] Moreover, the fact that any such proceeding may now be untimely does not alter the Court's analysis. *See Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 102 n.6 (2d Cir. 1988) ("[Plaintiff] may be barred by [the statute of] limitations from presently proceeding pursuant to Article 78. However, the fact that Article 78 may not now be available to [plaintiff] for that reason would not affect the result herein because [plaintiff] had available an Article 78 remedy whether she timely utilized it or not.") Similarly, to the extent that plaintiff is attempting to assert some type of "stigma-plus" claim or other due process challenge to the circumstances surrounding his demotion, Article 78 is also available to plaintiff to pursue such claims. *See Walsh v. Suffolk Cnty. Police Dep't*, No. 06-CV-2237 (JFB)(ETB), 2008 WL 1991118, at *14 (E.D.N.Y. May 5, 2008) ("The Second Circuit has held that in a case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim. Moreover, due process does not require a *pre*-termination name-clearing hearing with respect to at-will employees. New York provides for such a name-clearing hearing pursuant to CPLR Article 78, which allows a dismissed municipal employee an avenue for challenging his termination as arbitrary and capricious and contrary to law. It is well settled that the availability of an Article 78 proceeding bars a municipal employee from maintaining a Section 1983 procedural due process claim. The availability of an adequate post-deprivation procedure for reviewing the propriety of the dismissal means that there has been no constitutional violation.") (quotations and citations omitted), *aff'd on other grounds*, 341 F. App'x 674 (2d Cir. 2009).

These procedures – under Article 75 and Article 78 – are more than adequate post-deprivation remedies for purposes of due process under the circumstances as alleged. Thus, any due process claim by plaintiff must fail as a matter of law. *See Grillo*, 291 F.3d at 234 (dismissing Section 1983 due process claim because "[plaintiff] has not provided an adequate explanation for his failure to avail himself of the name-clearing hearing offered by an Article 78 hearing"); *Marino*, 837 F.2d at 47 (affirming dismissal of Section 1983 claim

---

[12] Although the County defendants refer to this as "failure to exhaust" under Article 75, that terminology is inaccurate. There is no exhaustion requirement to bring a Section 1983 proceeding. However, because one must show that the state procedural remedies are inadequate in order to bring a Section 1983 due process claim, the availability and non-use of such procedures would bar a Section 1983 claim. Thus, the argument is better characterized as a failure to use available, post-deprivation remedies. *See Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) ("Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate. [Plaintiff] has made no such showing, and his failure to do so is fatal to his action.").

due process claim challenging ALJ's evidentiary decision because, even assuming evidentiary error of a constitutional magnitude, an adequate state procedure existed to address any due process issue); *Monroe v. Schenectady Cnty.*, 1 F. Supp. 2d 168, 172 (N.D.N.Y. 1997) ("It is well-established in this Circuit that a N.Y.C.P.L.R. Article 78 proceeding provides an adequate post-deprivation remedy where a plaintiff alleges he was coerced into surrendering an employment-based property or liberty interest. In the present case, plaintiff's property and liberty deprivations are premised upon the allegation that the Department coerced him into foregoing the arbitration hearing and accepting the demotion. These are precisely the type of matters addressed in Article 78 proceedings. Thus, the post-deprivation remedy provided by New York law is, in this instance, all the process that plaintiff was due.") (citations omitted), *aff'd by* 152 F.3d 919 (2d Cir. 1998); *see also Pabon v. New York City Transit Auth.*, 703 F. Supp. 2d 188, 199 (E.D.N.Y. 2010) ("This Court is persuaded that the constitutionally sufficient remedies available to rectify any technical or procedural errors in the Transit Authority's robust grievance process, including resort to an Article 78 appeal proceeding, preclude a due process claim here.")

Other courts have reached the same conclusion under analogous circumstances. For example, in *Farraj v. Metropolitan Transit Authority*, No. 11-CV-0574, 2011 WL 2580198 (E.D.N.Y. June 28, 2011), plaintiff brought a Section 1983 due process claim challenging the arbitrator's decision finding cause to terminate his employment as a bus driver following his felony conviction. In granting the defendants' motion to dismiss, Judge Weinstein noted, as an initial matter, that "[t]o the extent plaintiff seeks only to challenge his arbitration award, his exclusive remedy is to bring a proceeding under CPLR Article 75 to vacate the award within ninety days." *Id.* at *1. With respect to the due process claim, Judge Weinstein held "[e]ven if defendants' conduct was actionable, plaintiff's claim for a deprivation of liberty interest without due process would fail because adequate post-deprivation remedies were available through an Article 78 proceeding under the New York Civil Practice Law and Rules, and plaintiff failed to take advantage of them." *Id.* at *2. Judge Weinstein further noted that "[p]laintiff has not argued that post-deprivation remedies have not been made available to him, and he never initiated such proceedings." *Id.* Thus, the Court dismissed the due process claim given the availability of the Article 78 proceeding as an adequate post-deprivation remedy.[13] *See also Jacobs v. Mostow*, 271 F. App'x 85, 89 (2d Cir. 2008) (noting that the Court was

---

[13] The Court is aware of Judge Dearie's decision in *Kreigsman v. New York City Transit Auth.*, No. CV 88-0769, 1988 WL 138273 (E.D.N.Y. Dec. 16, 1988), and finds it distinguishable. In particular, in that case, the Court made clear that "plaintiff's Complaint challenges the constitutional adequacy of the established state procedures themselves, and does not challenge random and unauthorized conduct in violation of the established state procedures." *Id.* at *4. Here, plaintiff is not challenging the adequacy of the state procedures, but rather is clearly challenging what he perceives as random and unauthorized acts in violation of the established state procedures. In fact, in a later decision, Judge Dearie applied *Marino* and held that the availability of an Article 78 proceeding precluded Section 1983 due process claim by a plaintiff challenging, *inter alia*, the alleged bias of the Town Board that discharged him. *See, e.g.*, *Pleickhardt v. Janoski*, No. CV 83-2314, 1989 WL 47705, at *5 (E.D.N.Y. 1989) ("Clearly the gravamen of plaintiff's Complaint is that the Town was biased against him; although he does state, amidst his plethora of allegations, that the mixing of functions is unconstitutional, plaintiff notably is *not* seeking to have section 75 [of the N.Y.C.S.L.] declared unconstitutional.") Thus, *Kreigsman* is inapposite, and plaintiff's due process claims must fail as a matter of law for the reasons set forth *supra*.

unable to identify any argument in the complaint "as to why § 3020-a [of the New York Education Law], which provides a full-blown adversarial hearing, would in this case be inadequate to satisfy the requirements of due process, especially given [plaintiff's] failure to utilize the process afforded him by state law to appeal the arbitrator's decision") (quotations and citations omitted).

In sum, plaintiff failed to utilize these post-deprivation procedures that were available to him under state law. Thus, his due process claim must be dismissed as a matter of law as against the individual County defendants and Scheinman.[14]

### c. Absolute Immunity

With respect to defendant Scheinman, the Court also concludes, in the alternative, that he has absolute immunity for any claims for money damages in connection with his performance as the arbitrator.

It is well settled that "any claims for damages against the arbitrator are barred by that individual's absolute immunity 'for all acts within the scope of the arbitral process.'" *Jacobs v. Mostow*, 271 F. App'x 85, 88 (2d Cir. March 27, 2008) (summary order) (quoting *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990)); *see also DeMarco v. City of New York*, No. 08-CV-3055 (RRM)(LB), 2011 WL 1104178 (E.D.N.Y. March 23, 2011) ("Accordingly, as the arbitrator in Plaintiff DeMarco's § 3020-a proceeding, [the arbitrator] is entitled to absolute immunity from liability for acts committed in that capacity."). Moreover, [w]hile absolute judicial immunity does not bar claims for prospective injunctive relief, such relief is not available under § 1983 absent an allegation of a violation of a prior declaratory decree. . . ." *Jacobs*, 271 Fed. App'x at 886 (citing *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)).

In the instant case, plaintiff makes various allegations against defendant Scheinman, including: (1) a conflict of interest based upon a failure to disclose a campaign contribution, and bias related to same; (2) delay in scheduling the hearing and an untimely award; (3) his decision was irrational and based on hearsay; and (4) intimidating behavior toward plaintiff at the hearing. All of these alleged actions relate to acts within the scope of the arbitrator and, thus, are barred by the doctrine of absolute immunity. Moreover, with respect to any request for prospective relief, there is no allegation of a violation of a prior declaratory decree and, thus, no such relief is available under Section 1983. Accordingly, the claims against defendant Scheinman must be dismissed as a matter of law.

### 2. Equal Protection Claim Against the County Defendants[15]

The County defendants argue that plaintiff's equal protection claim must be dismissed because the Supreme Court has precluded a "class of one" claim by public employees, such as plaintiff. For the reasons set forth below, this Court agrees

---

[14] As noted *supra*, any due process claim against the other defendants under this theory would likewise fail for the same reasons.

[15] In addition to arguing that the CSEA defendants are not state actors, the CSEA defendants argue that plaintiff's complaint fails to plead any facts alleging a valid equal protection claim. However, because this Court has already determined that the CSEA defendants are not state actors and cannot be liable under Section 1983 to plaintiff, the Court need not address the merits of plaintiff's equal protection claim against the CSEA defendants.

and finds that plaintiff's equal protection claim must be dismissed as a matter of law.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Cent., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Here, plaintiff does not allege that he is part of a protected class and, thus, appears to be bringing his claim pursuant to the Equal Protection Clause under the "class of one" theory. In *Prestopnik v. Whelan*, the Second Circuit explained the difference between "class of one" equal protection claims and more traditional equal protection claims:

> "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). While this clause "is most commonly used to bring claims alleging discrimination based on membership in a protected class," it may also be used to bring a "class of one" equal protection claim. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In a "class of one" case, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Neilson*, 409 F.3d at 105.

249 F. App'x 210, 212-13 (2d Cir. 2007); *see also King v. N.Y. State Div. of Parole*, 260 Fed. App'x 375, 379 (2d Cir. 2008) ("In [*Olech*], the Supreme Court recognized the viability of an Equal Protection claim 'where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" (quoting *Olech*, 528 U.S. at 564, 120 S.Ct. 1073)).

As the County defendants correctly argue, to the extent that plaintiff is attempting to assert a "class of one" claim under the Equal Protection Clause, that claim cannot survive a motion to dismiss in the wake of *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 605-07, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), in which the Supreme Court held that no "class of one" claims can be asserted in the public employer context. *See also Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008) ("Recently, the Supreme Court held that the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause under a 'class of one' theory."); *Stimeling v. Bd. of Educ.*, No. 07-CV-1330, 2008 WL 2876528, at *4 (C.D.Ill. July 24, 2008) ("In light of *Engquist*, the Court sees no possibility that Plaintiff can state a class-of-one retaliation claim based on the equal protection clause."). Accordingly, plaintiff's equal protection claim against the individual County defendants fails.

### IV. LEAVE TO RE-PLEAD

Although plaintiff has not requested leave to amend or re-plead his complaint, the Court has considered whether plaintiff should be granted an opportunity to re-plead. The Second Circuit has emphasized that

15

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed.R. Civ. P. 15(a). However, even under this liberal standard, the Court finds that any attempt to amend the pleading of plaintiff's Section 1983 claims in this case would be futile.

As discussed in detail *supra*, plaintiff has failed to pursue the post-deprivation Article 75 proceeding available to him, and the time do so has long since expired. Thus, no plausible due process claim can exist. Moreover, plaintiff's "class of one" equal protection claim cannot be brought in the public employer context. These defects cannot be cured in an amended pleading. In addition, Hoffman, Connick and the CSEA defendants are not state actors, and conclusory statements of conspiracy cannot create a plausible Section 1983 conspiracy claim. In any event, any attempt to re-plead a Section 1983 conspiracy claim against the private actors would be futile because, given that the underlying due process claim cannot survive as a matter of law against the state actors, no Section 1983 conspiracy claim can exist as to the private parties.

Finally, defendant Schienman is entitled to absolute immunity as an arbitrator, and additional pleadings cannot overcome that immunity in this case.

In short, plaintiff was given multiple extensions of time in order to oppose the motions and explain the legal basis for his position. However, plaintiff has still failed to present any meaningful allegations in his opposition that leads the Court to believe he will be able to correct the pleading defects. Accordingly, it is abundantly clear that no amendments can cure the defects to the federal claims in this case, and any attempt to re-plead would be futile. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Re-pleading would thus be futile. Such a futile request should be denied."); *see also Hayden v. Cnty.of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied."). However, as stated *supra*, the Court has declined to exercise jurisdiction over plaintiff's state law claims against Hoffman, Connick and the CSEA defendants for breach of the duty of fair representation. Accordingly, any state claims are dismissed without prejudice.

## V. Conclusion

For the foregoing reasons, the defendants' pending motions to dismiss the federal claims under Rule 12(b)(6) are granted. All federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over any state claims, and such claims are dismissed without prejudice. The complaint is dismissed. The Clerk of the Court shall enter judgment and close the case accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 16, 2012
       Central Islip, NY

\* \* \*

Plaintiff is proceeding *pro se*. Defendants the County of Nassau, Thomas R. Suozzi, Bonnie Garone, John Imhof, Mary Brosnan and Maureen McLoughlin are being represented by Debroh Nirmala Misir, Esq., Grant M. Lally, Esq., and William G, Morris, Esq., of Lally & Misir, LLP, 220 Old Country Road, Mineola, NY 11501. Defendants Civil Service Employee Association (CSEA) Local 1000 AFSCME, AFL-CIO, Civil Service Employee Association (CSEA) Local 830 AFSCME, AFL-CIO, Jerry Laricchiuta, Rigo Predonzan and Ronald Guierri are being represented by Amilia K. Tuminaro, Esq. of Gladstein Reif & Meginniss, LLP, 817 Broadway, 6th Floor, New York, NY 10003. Defendant Martin F. Scheinman is being represented by William Goldman Scher, Esq., of Garbarini and Scher, P.C., 432 Park Avenue South, New York, NY 10016. Defendants Nancy Hoffman, Esq., and Tim Connick, Esq., are being represented by Danielle M. Dandridge M. Dandrige, Esq., are being represented by Hoey King Toker & Epstein, 55 Water Street, 28th Floor, New York, NY 10041.